Sanford Shatz          State Bar No. 127229
Sandy_Shatz@Countrywide.com
5220 Las Virgenes Road, MS: AC-11
Calabasas, California 91302
Telephone:    (818) 871-6062
Facsimile:    (818) 871-4669

Attorneys for Defendant Countrywide Home Loans, Inc.


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| DONNIE KNAULS, | ) Case No.: 07-CV-2233-DMS (NLS) |
| | ) |
| Plaintiff, | ) Hon. Dana M. Sabraw |
| | ) Courtroom: 10 |
| vs. | ) |
| | ) NOTICE OF MOTION AND MOTION TO |
| WMC MORTGAGE, ASC/AMERICA'S | ) DISMISS PLAINTIFF'S AMENDED |
| SERVICING COMPANY MORTGAGE | ) COMPLAINT; MEMORANDUM OF |
| LENDERS NETWORK USA INC, | ) POINTS AND AUTHORITIES; REQUEST |
| COUNTRYWIDE HOME LOANS, | ) FOR JUDICIAL NOTICE |
| | ) [F.R.C.P. Rule 12(b)(6); F.R.C.P. Rule 12(e)] |
| Defendants. | ) |
| | ) [Oral Argument Not Required] |

Date:        May 23, 2008
Time:        1:30 p.m.
Courtroom:    10


TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 23, 2008, at 1:30 p.m., or as soon thereafter as the

matter may be heard in Courtroom 10 of the above-entitled court located at 880 Front Street, San

Diego, California 92101, defendant Countrywide Home Loans, Inc. ("Countrywide") will move

to dismiss plaintiff Donnie Knauls' ("Knauls") "Amended Complaint to Action of Quiet Title"

("FAC") and each of its purported causes of action pursuant to Federal Rule of Civil Procedure,

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1  Rule12(b)(6), or in the alternative for a more definite statement pursuant to Federal Rule of Civil

2  Procedure, Rule 12(e), on the grounds that Knauls fails to state a claim upon which relief can be

3  granted against Countrywide, and the FAC is so vague and ambiguous that Countrywide cannot

4  reasonably be required to frame a responsive pleading.  Further, Knauls lacks standing to bring

5  this action on the grounds that a 12 C.F.R. 226.23 and a 15 U.S.C. 1635(a) violation can only be

6  alleged in a credit transaction in which a security interest is or will be retained or acquired in a

7  consumer's principal dwelling, and there are no allegations that any of the three residences which

8  are allegedly the subject matter of this action are Knauls' principal dwelling.  (See, 12 C.F.R.

9  226.23 and 15 U.S.C. 1635(a).)  It is unlikely that all three addresses are Knauls' principal

10 residence and there are no allegations in this regard.  The transactions, as a matter of law, were

11 not subject to the right of rescission and thus no relief can be obtained by Knauls under the

12 enumerated codes.

13       Additionally, the FAC fails to give "fair notice of what the plaintiff's claim is and the

14 grounds upon which it rests" as required by F.R.C.P. 8(a).  (See also, <u>Conley v. Gibson</u> (1957)

15 355 U.S. 41, 47-48 (overruled on other grounds at <u>Bell Atl. Corp. v. Twombly</u> (2007) 127 S.Ct.

16 1955, 1968.)  The FAC fails to state how or when these statutes were violated, whether he ever

17 received the required disclosures, or whether he attempted to rescind the transaction within the

18 initial three days.

19       Knauls' FAC fails to state a claim of any type against Countrywide in that the FAC is

20 incomprehensible and unintelligible; the FAC purports to assert claims against at least four

21 separate defendants, yet the FAC lumps all of the defendants together as though a single entity,

22 without stating a claim against each, or identifying what any particular defendant did which

23 would give rise to a cognizable claim; each time a specific defendant is mentioned, no specific

24 facts are alleged against that defendant related to any claim; there are no facts alleged about

25 Countrywide; there are no facts alleged about Countrywide related to any specific claim; no

26 specific claim is identified; Knauls alleges no wrongful conduct by Countrywide; and Knauls'

27 purported claims do not exist.

28 ///

1    If Knauls' FAC is challenging Countrywide's ability to pursue foreclosure of certain

2  properties owned by Knauls and subject to notes secured by deeds of trust, Knauls fails to allege

3  that he repaid the loans obtained, and he lacks standing to challenge foreclosure of the subject

4  properties because he has not tendered the undisputed amount owing.  His claim regarding

5  violation of the Truth In Lending Act also fails because he has sold the properties to third parties

6  and can no longer rescind the loans at issue with respect to those properties.

7    In addition, although this court provided Knauls with an opportunity to amend his

8  incomprehensible Complaint, the FAC remains so vague and ambiguous that Countrywide

9  cannot determine the nature of the claims allegedly asserted against it, and the FAC must be

10  rewritten so that Countrywide can frame a responsive pleading.

11    This motion to dismiss is based upon this notice of motion and motion, the attached

12  memorandum of points and authorities, the attached request for judicial notice, the files,

13  pleadings and records in this action, and upon such other and further oral and documentary

14  evidence as may be presented at the hearing of the motion.

15

16  DATED:  April 3, 2008            By: _____

17                                              SANFORD SHATZ

18                                              Attorney for Defendant
                                              Countrywide Home Loans, Inc.

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2  I.    INTRODUCTION.

3      This case arises in part out of Plaintiff Donnie Knauls' ("Knauls") default on two

4  mortgage loans, encumbering two separate properties, which loans are currently serviced by

5  defendant Countrywide Home Loans, Inc. ("Countrywide").[1]  (See Request for Judicial Notice

6  ("RJN"), Exhibits "A", "B" and "D".)  It appears that after Knauls obtained the loans and began

7  making payments to Countrywide, he defaulted and Countrywide began foreclosure proceedings.

8  In a desperate effort to avoid foreclosure sales on these properties, Knauls filed this action

9  seeking to divert attention from his failure to make mortgage payments.  Although this court

10  provided Knauls with an opportunity to cure the incomprehensible allegations contained in his

11  former Complaint, Knauls' FAC nevertheless continues to allege assorted nonsense concerning

12  the loans, which claims are so indecipherable that Countrywide cannot begin to address them.[2]  It

13  does appear unequivocally however, that Knauls obtained three loans which are being serviced

14  by Countrywide, and that his sole obligation is to repay those loans.  Because Knauls has not

15  repaid the loans, Countrywide is entitled to proceed with foreclose proceedings.  There is no

16  merit whatsoever to Knauls' purported claims and they should be dismissed.

---

17  [1]    For the court's edification, Countrywide Loan Nos. 74480251 and 74480259 relate to
18  property located at 2360 Cypress Avenue, Lemon Grove, California 91945 (the "Cypress
   Property") which were originated by WMC Mortgage and are now serviced by Countrywide.
19  Countrywide Loan No. 73785492 relates to property located at 545 West 115th Street, Los
20  Angeles, California 90044 (the "West 115th Street Property") was originated by Argent
   Mortgage Company, LLC, and is also now serviced by Countrywide.  Other loans originated
21  or serviced by ASC/America's Servicing Company and Mortgage Lenders Network USA Inc.
   may be at issue in the FAC, but they do not relate to Countrywide, and Countrywide takes no
22  position concerning them.  As to the remaining defendants, these various entities and/or
   individuals are only mentioned casually within the FAC, but are not set forth in the summons
23  or on the caption page of the FAC.  Thus Countrywide is unaware how the plaintiff's
24  purported claims relate to these purported defendants, if at all.

25  [2]    Since December 3, 2007, Knauls has also, on **four** occasions, filed for protection under
26  Chapter 13 of the Bankruptcy Code, Case Nos. 07-06993-JM13 (dismissed January 10,
   2008), 08-00067-JM13 (dismissed January 30, 2008), 08-00920-JM13 (dismissed March 3,
27  2008), and 08-02467-JM13 (currently pending however, on April 1, 2008, the Clerk of the
   Bankruptcy Court noted "Evidence of Repeat Filings.")
28

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1    Countrywide respectfully requests that the court dismiss Knauls' FAC or order him to re-

2   plead it. Knauls does not assert a cognizable claim against Countrywide. His claim regarding

3   violation of "Regulation Z Truth In Lending Action, Title 5 [sic] U.S.C. section 1635(a), Title 12

4   C.F.R. 226.23(D)(I)" fails in that it is completely unintelligible and Countrywide cannot apprise

5   itself of what violations it is alleged to have committed and to what it must defend itself.

6   Additionally, Knauls lacks standing to challenge enforcement of the subject loans secured by the

7   deeds of trust encumbering the properties because he has sold the properties to others. (See RJN,

8   Exhibits "C" and "E".)

9    Furthermore, Knauls has alleged violations relating to three separate parcels of real

10   property. Violations of 15 U.S.C. section 1635(a) and Title 12 C.F.R. 226.23(D)(I) can only be

11   alleged on the "consumer's" primary residence. Without such allegation of the location of his

12   primary residence, plaintiff cannot state a claim, as a matter of law, under the enumerated code

13   sections.

14    Unless and until Knauls specifies his claims against Countrywide, the court should

15   dismiss his FAC. Alternatively, if Knauls is attempting to challenge Countrywide's ability to

16   pursue foreclosure sales of the subject properties, unless and until he tenders the undisputed

17   amount owing, he lacks standing to prosecute this action and his claims should be dismissed.

18   Since there is no basis to the claims, they should be dismissed.

19

20   II.    ARGUMENT.

21        A.    Rule 12(b)(6).

22    Federal Rule of Civil Procedure 12(b) provides that "[e]very defense, in law or fact, to a

23   claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim,

24   shall be asserted in the responsive pleading thereto if one is required, except that the following

25   defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon

26   which relief can be granted ...." The court must decide whether the facts alleged, if true, would

27   entitle plaintiff to some form of legal remedy. If the answer is unequivocally, "no", the motion

28   must be granted. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1    As was the case with Knauls' initial Complaint, his FAC continues to be woefully void of

2    any specific causes of action.  Knauls purports to assert claims for violation of Regulation Z of

3    the Truth In Lending Act, but fails to allege sufficient facts to support any of these claims.  This

4    statute relates to the origination of loans and the disclosures provided with loan origination.

5    Knauls fails to allege any facts concerning the origination of these loans or identify the

6    disclosures that were provided to him.

7    Knauls also incorrectly cites to the United States Code section under which he seeks

8    relief.  It is believed that Countrywide is being sued for violations of "Regulation Z Truth and

9    Lending Action, Title 5 [sic] U.S.C. section 1635(a), Title 12 C.F.R. 226.23(D)(I)", although due

10   to the completely unintelligible nature of the FAC, Countrywide cannot even begin to apprise

11   itself of what violations it is alleged to have committed and to what it must defend itself against.

12   Furthermore, Knauls has alleged violations relating to three separate parcels of real property.

13   Violations of 15 U.S.C. § 1635(a) and Title 12 C.F.R. § 226.23(d)(I) can only be alleged on the

14   "consumer's" primary residence.  Without such allegation of the location of his primary

15   residence, plaintiff cannot state a claim, as a matter of law.

16   Any challenge to Countrywide's ability to pursue foreclosure of the subject properties

17   fails because Knauls does not allege he repaid the loans obtained and thus lacks standing to

18   challenge foreclosure because he has not tendered the undisputed amount owing.  Any claim

19   regarding violation of the Truth In Lending Act also fails because Knauls sold the properties to

20   third parties and can no longer rescind the loans.  Further, Knauls' claim regarding violation of

21   "Regulation Z Truth In Lending Action, Title 5 [sic] U.S.C. section 1635(a), Title 12 C.F.R.

22   226.23(D)(I)" is completely unintelligible, leaving Countrywide unable to apprise itself of what

23   violations it is alleged to have committed and to what it must defend itself.

24   Regardless of the purported validity of Knauls' claims, he has not repaid his mortgages

25   and lacks standing to challenge foreclosure sale of the subject properties.  Moreover, Knauls no

26   longer owns either property.

27   There is no basis to these claims.  There is no merit to these claims.  Each should be

28   dismissed.

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1      B.    <u>The FAC Does Not State A Claim Upon Which Relief Can Be Granted As The</u>

2           <u>Plaintiff Has Not Alleged His Principal Place Of Residence.</u>

3      A Rule 12(b)(6) dismissal is proper where there is either a "lack of cognizable legal

4  theory" or "the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v.</u>

5  <u>Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990); <u>Graehling v. Village of Lombard, Ill.</u>, 58

6  F.3d 295, 297 (7th Cir. 1995).

7           [I]n the case of any consumer credit transaction … in which a

8           security interest, including any such interest arising by operation of

9           law, is or will be retained or acquired in any property which is used

10          as the principal dwelling of the person to whom credit is extended,

11          the obligor shall have the right to rescind the transaction ….

12  *See* 15 U.S.C. § 1635(a).

13          [I]n a credit transaction in which a security interest is or will be

14          retained or acquired in a consumer's principal dwelling, each

15          consumer whose ownership interest is or will be subject to the

16          security interest shall have the right to rescind the transaction ….

17  *See* 12 C.F.R. § 226.23(a)(1).

18      Here, Knauls' FAC, in its entirety, fails to state a claim for violations of Regulation Z

19  and the Truth and Lending Act, primarily and specifically because there are no allegations that

20  the "credit transaction" in which Countrywide participated in with plaintiff was for his principal

21  residence. In fact, as demonstrated by the grant deeds attached as Exhibits "C" and "E" to the

22  request for judicial notice, the plaintiff no longer owns either property. Plaintiff has not alleged

23  that any of the real properties are his principal place of residence and thus, as a matter of law,

24  cannot use the enumerated codes as a basis for his lawsuit.

25      Because the threshold element of a Regulation Z and Truth in Lending Act violation has

26  not been alleged, this motion must be granted pursuant to Rule 12(b)(6). Knauls unequivocally

27  is not entitled to the relief requested.

28  ///

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1    C.    <u>Knauls Lacks Standing To Pursue His Claims Because He Has Not Tendered,</u>

2         <u>Nor Alleged That He Tendered, The Undisputed Obligation In Full.</u>

3         To the extent that Knauls is challenging any proposed foreclosure sale of the subject

4    properties, he may not do so until he has tendered the undisputed obligation in full.  The tender

5    requirement applies to "any cause of action for irregularity in the sale procedure."  <u>Abdallah v.</u>

6    <u>United Savings Bank</u>, 43 Cal. App. 4th 1101, 1109 (1996) (affirming sustaining of demurrer

7    without leave to amend):

8              "It would be futile to set aside a foreclosure sale on the technical

9              ground that notice was improper, if the party making the challenge

10             did not first make full tender and thereby establish his ability to

11             purchase the property."

12   <u>United States Cold Storage v. Great W. Sav. & Loan Ass'n</u>, 165 Cal. App. 3d 1214, 1225 (1985)

13   (affirming judgment of nonsuit).

14        The requirement that a tender of the amount owing is necessary before a foreclosure sale

15   can be challenged applies to any claim implicitly integrated with the foreclosure sale.  <u>Arnolds</u>

16   <u>Management Corp. v. Eischen</u>, 158 Cal. App. 3d 575, 579 (1984).  "A cause of action 'implicitly

17   integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender."

18   (Affirming sustaining of demurrer without leave to amend on claims of wrongful foreclosure,

19   fraud, and negligence relating to defective notice of foreclosure sale; *see also* <u>Karlsen v.</u>

20   <u>American Sav. & Loan Ass'n</u>, 15 Cal. App. 3d 112, 121 (1971) (holding plaintiff's claims for

21   breach of oral agreement, for an accounting, and for constructive trust fail because plaintiff never

22   made a valid tender.))  "To hold otherwise would permit plaintiffs to state a cause of action

23   without the necessary element of damage to themselves."  <u>Arnolds Management Corp.</u>, <u>supra</u>,

24   158 Cal. App.3d at 580.

25        There is no basis to enjoin Countrywide's ability to pursue foreclosure sales on Knauls'

26   deeds of trust particularly since he has not tendered the actual amounts due and owing, nor has he

27   made any allegations that he did in fact tender the amounts owing to Countrywide, which

28   requirement is necessary prior to challenging Countrywide's foreclosure of the subject properties.

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1    Knauls fails to allege that he made any tender, in any specific amount, with any negotiable

2    instrument specifically to Countrywide.  While Knauls claims that he gave unspecified entities

3    unspecified commercial instruments, he does not allege any facts to show that he repaid any of

4    the three loans serviced by Countrywide, or even tendered the undisputed amount owing.  The

5    sole purpose of the FAC (as well as Knauls' various bankruptcy petitions) appears to be to delay,

6    slow down, or stop Countrywide's ability to pursue foreclosure efforts.  Knauls lacks standing to

7    challenge a foreclosure action because he has not tendered, nor has he alleged that he tendered,

8    the undisputed amount owing on the subject loans.  Knauls has not alleged that he made any

9    payments on the loans, that the loans are otherwise invalid, that his signatures were forged, or

10    that there was any defect in the assignment of the loans to Countrywide.

11        Simply put, there is no basis to Knauls' claims, he lacks standing to pursue them, and

12    they should be dismissed.

13        D.    Knauls Lacks Standing To Pursue His Claims Because He Does Not Own The

14              Subject Properties.

15        Knauls lacks standing to challenge enforcement of the subject loans secured by deeds of

16    trust encumbering the properties because he has sold the properties to others.  Knauls sold the

17    Cypress Property to Ideal Mortgage Lenders on or about November 23, 2007.  See Grant Deed

18    recorded on November 28, 2007, in the San Diego County Recorder's Office and designated as

19    Instrument No. 2007-0742267.  RJN, Ex. "C."  Similarly, Knauls sold the West 115th Street

20    Property to Ideal Mortgage Lenders on or about November 23, 2007.  See Grant Deed recorded

21    on November 29, 2007, in the Official Records, Los Angeles County Recorder's Office, as

22    Instrument No. 2007-2627726.  RJN, Ex. "E."  Thus it is axiomatic that because Knauls no

23    longer owns the properties, he cannot challenge Countrywide's foreclosure of them.

24        Furthermore, Knauls' purported efforts to rescind unspecified documents could include

25    the deeds of trust at issue.  However, a borrower's right to rescind a mortgage loan expires upon

26    the sale of the property.  15 U.S.C. §1635(f).

27

28

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1       E.     Knauls' Claim To Have Satisfied The Debt Is Without Merit And Should Be

2             Disregarded.

3      Knauls' complaint contains a purported "notice and demand for beneficiary termination

4 and successor beneficiary appointment" related to the subject loans. See FAC, page 24 of 50.

5 The notice and demand specifically informs the beneficiary, who is servicing the loan, that

6 "Countrywide Home Loans, its successors and assigns are hereby fired!" Id. These purported

7 documents were sent to various lenders concerning the loans at issue.

8      Knauls' also sent a "bill of exchange, bill of acceptance-time draft" concerning his loans.

9 See e.g., FAC, page 29 of 50. This purported bill of exchange seeks to satisfy the outstanding

10 loans by having the Secretary of Treasury pay off the debt through this court action. There is no

11 basis to expect that the Secretary of Treasury or this court will satisfy Knauls' debt and he

12 provides no allegations for any basis to do so. By "firing" the beneficiary and requesting that the

13 secretary pay off the debt, Knauls acknowledges the existence of the debt and his need to repay

14 it. Knauls' method of repaying the debt is unavailing, and it should be disregarded. There is no

15 basis to Knauls' claims.

16

17  III.    IF THE COURT DOES NOT DISMISS THE FAC, THE COURT SHOULD ORDER

18        KNAULS TO PROVIDE A MORE DEFINITIVE STATEMENT OF HIS CLAIMS

19        AGAINST COUNTRYWIDE.

20      Federal Rules of Civil Procedure Rule 12(e) provides that "[i]f a pleading to which a

21 responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be

22 required to frame a responsive pleading, the party may move for a more definite statement before

23 interposing a responsive pleading." In the present case, Knauls' FAC is incomprehensible and

24 barely mentions any facts about Countrywide. It is difficult, at best, to even understand why

25 Countrywide is a party. Therefore, in the event that the court is not inclined to dismiss the action

26 based on Knauls' lack of standing and failure to allege facts sufficient to constitute a cause of

27 action against this responding party, Countrywide respectfully requests that Knauls be ordered to

28 provide it with a more definitive statement of his claims to afford Countrywide with an

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1  opportunity to address his claims and frame a responsive pleading as mandated by Rule 12(e).

2

3  IV.    CONCLUSION.

4        Simply put, girth does not equate to substance.  Knauls' latest 22 page missive strings

5  together 22 pages of text without mentioning Countrywide as an individual entity, without

6  specifying any (wrongful) acts or omissions undertaken by Countrywide, without explaining

7  Countrywide's role in his life, without providing any basis to show that Countrywide acted

8  wrongfully, and without even identifying the claims asserted against Countrywide the subject

9  properties which are no longer owned by Knauls.  All that can be discerned from Knauls' FAC is

10  that he identifies three Countrywide loans, which loans are currently in default and subject to

11  foreclosure.  Unless and until Knauls is able to state sufficient facts to constitute a claim against

12  Countrywide, Countrywide respectfully requests that the court dismiss this action in its entirety

13  or, in the alternative, order that Knauls provide Countrywide with a more definitive statement as

14  to his claim against this responding party.

15

16  DATED:  April 3, 2008              By:  _____

17                                         SANFORD SHATZ
                                           Attorney for Defendant
18                                         Countrywide Home Loans, Inc.

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1

<u>REQUEST FOR JUDICIAL NOTICE</u>

2          Defendant Countrywide Home Loans, Inc. requests, pursuant to Federal Rules of

3    Evidence Rule 201, that the court take judicial notice of the following documents, each of which

4    were recorded in the recorder's office of the applicable county and state.  True and correct copies

5    of the documents are attached to this request for judicial notice as follows:

6          1.        Exhibit "A":  Deed of Trust recorded on December 29, 2006, as Instrument No.

7    2006-0924774, in the San Diego County Recorder's Office, San Diego, California, and securing

8    a loan for $344,000.00 given by borrower Donnie R. Knauls, Sr. to lender WMC Mortgage Corp.

9    using property located at 2360 Cypress Avenue, Lemon Grove, California 91945;

10          2.        Exhibit "B":  Grant Deed recorded on November 28, 2007, as Instrument No.

11   2007-0742267, in the San Diego County Recorder's Office, San Diego, California, conveying the

12   property located at 2360 Cypress Avenue, Lemon Grove, California 91945, from Donnie Knauls

13   to Ideal Mortgage Lenders;

14          3.        Exhibit "C":  Deed of Trust recorded on October 2, 2006, as Instrument No.

15   062187084, in the Official Records, Los Angeles County Recorder's Office, Los Angeles,

16   California, and securing a loan for $360,000.00 given by borrower Donnie Ray Knauls to lender

17   Argent Mortgage Company, LLC, using property located at 545 West 115th Street, Los Angeles,

18   California 90044; and

19          4.        Exhibit "D":  Grant Deed recorded on November 29, 2007, as Instrument No.

20   20072627726, in the Los Angeles County Recorder's Office, Los Angeles, California, conveying

21   the property located at 545 West 115th Street, Los Angeles, California 90044, from Donnie

22   Knauls to Ideal Mortgage Lenders.

23

24

25

26

27

28

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

1    Countrywide requests that the court take judicial notice of the foregoing documents on

2  the grounds that they are not subject to reasonable dispute in that they are generally known within

3  the territorial jurisdiction of the trial court and they are capable of accurate and ready

4  determination.

5

6  DATED:  April 3, 2008                By: _____

7                                            SANFORD SHATZ

8                                            Attorneys for Defendant
                                             Countrywide Home Loans, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

s:\ss\lc\Knauls-C\mot-dis-FAC                – 13 –

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE

# Exhibit "A"

EXHIBIT A

RECORDING REQUESTED BY

**LAWYERS TITLE**

~~Recording Requested By~~ /
Return To:
WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

Attn:   (WHOLESALE)

Prepared By:
KEILA GONZALEZ

WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

**5739**

DOC #   2006-0924774



DEC 29, 2006    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:         66.00
PAGES:        20        DA:       1

2006-0924774

*2 393509-48*

[Space Above This Line For Recording Data]

**DEED OF TRUST**

Serv #:  11776325

KNAULS
Loan #:   11776325
MIN:     100136300117763259
PIN:     480-620-22-00

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.
(A)  "Security Instrument" means this document, which is dated December 22, 2006      , together with
all Riders to this document.
(B)  "Borrower" is DONNIE R KNAULS, SR., A SINGLE MAN

*0480-620~ 22*

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is WMC MORTGAGE CORP.

Lender is a  Corporation                              organized and existing under the laws of
CALIFORNIA                    . Lender's address is   3100 THORNTON AVE., BURBANK,
CA 91504-3183
(D)  "Trustee" is  WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01
DOCUKCA1                                                                   *(page 1 of 14 pages)*
DOCUKCA1.VTX  12/19/2005

EXHIBIT A

5740

11776325                                                    11776325

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "**Note**" means the promissory note signed by Borrower and dated  **December 22, 2006**  . The Note states that Borrower owes Lender

**Three Hundred Forty-Four Thousand And 00/100**
Dollars (U.S. $  **344,000.00**  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **January 1, 2037**

(G)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☒ Other(s) [specify] **Balloon Rider**

(J)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "**Escrow Items**" means those items that are described in Section 3.

(N)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 2 of 14 pages)*
DOCUKCA2
DOCUKCA2.VTX  12/16/2005

EXHIBIT A

5741

11776325                                                    11776325
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably
grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                    of    SAN DIEGO                                                              :
[Type of Recording Jurisdiction]             [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS
EXHIBIT 'A'.

which currently has the address of    2360 CYPRESS AVENUE
                                      [Street]
LEMON GROVE                           , California  91945                ("Property Address"):
[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as
the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but
not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but
not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to
any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items
pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.
However, if any check or other instrument received by Lender as payment under the Note or this Security
Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the
Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash;
(b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is
drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or
(d) Electronic Funds Transfer.
     Payments are deemed received by Lender when received at the location designated in the Note or at such
other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender
may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan
current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver
of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but
Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment
is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold
such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01        *(page 3 of 14 pages)*
DOCUKCA3
DOCUKCA3.VTX   12/16/2005

‖‖‖ ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ ‖‖‖

EXHIBIT A

5742

11776325                                                    11776325
a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01     *(page 4 of 14 pages)*
DOCUKCA4
DOCUKCA4.VTX   12/16/2005

EXHIBIT A

5743

11776325                                                    11776325

verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESP A, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01       (page 5 of 14 pages)
DOCUKCA5
DOCUKCA5.VTX  12/16/2005

EXHIBIT A

5744

11776325                                                              11776325

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01        *(page 6 of 14 pages)*
DOCUKCA6
DOCUKCA6.VTX  12/14/2005

EXHIBIT A

5745

11776325                                                    11776325

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3005 1/01        *(page 7 of 14 pages)*
DOCUKCA7
DOCUKCA7.VTX  12/16/2005

EXHIBIT A

5746

11776325                                                    11776325

such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 8 of 14 pages)*
DOCUKCA8
DOCUKCA8.VTX  12/16/2005

EXHIBIT A

5747

11776325                                                    11776325

otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01          *(page 9 of 14 pages)*
DOCUKCA9
DOCUKCA9.VTX  11/16/2005

EXHIBIT A

5748

11776325                                                                11776325

by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3005 1/01      *(page 10 of 14 pages)*
DOCUKCA10
DOCUKCAA.VTX   12/16/2002

EXHIBIT A

5749

11776325                                                                      11776325

Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 11 of 14 pages)*
DOCUKCA11
DOCUKCA8, VTX   12/16/2005

5750

11776325                                                                                            11776325
Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01        *(page 12 of 14 pages)*
DOCUKCA12
DOCUKCAC.VTX   12/16/2005

EXHIBIT A

5751

11776325                                                11776325

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

*Donnie R Knauls Sr.*     12-27-2006

- Borrower - DONNIE R KNAULS SR. - Date -

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01     *(page 13 of 14 pages)*
DOCUKCA13
DOCUKCAD.VTX   12/15/2005

SAN DIEGO,CA     DOCUMENT: TD 2006.924774                    Page 13 of 20

Printed on 2/7/2008 5:22:46 PM          Provided by DataTrace System

EXHIBIT A

5752

11776325                                                    11776325
                    [Space Below This Line For Acknowledgment]

State of California                    )
County of Los Angeles                 )
On December 22, 2006 before me, Patricia Garvey, Notary Public
                                      (Here insert name and title of the officer)
personally appeared
        Donnie R. Knauls Sr.

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

PATRICIA GARVEY
Commission # 1425268
Notary Public - California
Orange County
My Comm. Expires Jun 20, 2007

Signature _____ (Seal)

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    (page 14 of 14 pages)
DOCUKCA14
DOCUKCA8.VTX   04/10/2006

5753

## ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)

Serv #: 11776325

KHAULS
Loan #: 11776325
MIN: 100136300117763259

THIS ADJUSTABLE RATE RIDER is made this **22nd** day of **December, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to **WMC MORTGAGE CORP.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**2360 CYPRESS AVENUE, LEMON GROVE, CA 91945**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **7.535** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)    Change Dates
The interest rate I will pay may change on the first day of **January, 2009** , and may change on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
DOCUJINI
DOCUJIN1.VTX  01/27/2006

Page 1 of 3

5754

11776325                                  11776325

**(B)    The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Nine Hundred Seventy-Five Thousandths** percentage point(s) ( **5.975** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on a date that is **20** years after the Maturity Date (such date being referred to herein as the "Amortization Date") at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. I understand that as a result of the Amortization Date being after the Maturity Date, I will have a balloon payment on the Maturity Date.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.535** % or less than **7.535** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **14.035** %, or less than **7.535** %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
Page 2 of 3
DOCU3IN2
DOCU3IN2.VTZ  05/24/2006

5755

11776325                                          11776325

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

*Donnie R. Knauls Sr.*   12-22-2006
- Borrower - DONNIE R KNAULS SR. - Date -

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
Page 3 of 3
DOCUIN3
DOCU2IN3.VTX  01/27/2006

SAN DIEGO,CA    DOCUMENT: TD 2006.924774                    Page 17 of 20

Printed on 2/7/2008 5:22:46 PM        Provided by DataTrace System

EXHIBIT A

5756

[Space Above This Line For Recording Data]

## BALLOON RIDER

KNAULS
Loan #: 11776325
MIN: 100136300117763259

Serv #: 11776325

THIS BALLOON RIDER is made this 22nd    day of December, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
2360 CYPRESS AVENUE LEMON GROVE, CA 91945

[Property Address]

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

NOTWITHSTANDING THE   50   -YEAR AMORTIZATION PERIOD, THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN

BALLOON RIDER MULTISTATE (01/97)
DOCU#A1
DOCU#A1.VTX  05/24/2006                    Page 1 of 2

EXHIBIT A

5757

11776325
IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.  ACCORDINGLY, IF THIS LOAN
HAS NOT BEEN SATISFIED, YOU WILL HAVE A BALLOON PAYMENT ON THE MATURITY
DATE.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

*Donnie R Knauls*    *1-22-2006*
- Borrower - DONNIE R KNAULS SR. - Date -

BALLOON RIDER MULTISTATE (01/97)
DOCUAA2
DOCU4AA2.VTX  05/24/2006                 Page 2 of 2

EXHIBIT A



5758

# EXHIBIT "A"

All that certain real property situated in the County of San Diego, State of California, described as follows:

That portion of Tract No. 1370, in the City of Lemon Grove, County of San Diego, State of California, according to Map thereof No. 1370, filed in the office of the County Recorder of San Diego County, September 7, 1911, described as follows:

Beginning at the Southeast corner of said Tract;

Thence North 89° 36' West along the Southerly line of said Tract 216.25 feet to the Southeast corner of that tract of land conveyed by Harold S. McLean and Josephine McLean, husband and wife, to Carrie I. Boyd, by Deed dated July 6, 1928 and recorded in Book 1510, page(s) 218, of Deeds;

Thence North 1° 17' 10" West along the East line of the land so conveyed to Carrie I. Boyd, 839 feet to the Northwesterly corner of the land described in Deed to Reuben I. Seder, et ux, recorded June 29, 1946, in Book 2190, page(s) 385, of Official Records, said corner being the True Point of Beginning;

Thence retracing South 1° 17' 10" East 50 feet;

Thence South 89° 36' East 216.67 feet to the East line of said Tract;

Thence North 1° 15' West along said East line 50 feet to the Northeast corner of said Seder land;

Thence North 89° 36' West 216.70 feet to the True Point of Beginning.

EXHIBIT A

# Exhibit "B"

EXHIBIT B

DOC # 2007-0742267

Escrow No.:
Order No.
RECORDING REQUESTED BY

WHEN RECORDED MAIL TO:

IDEAL MORTGAGE LENDERS
7107 Broadway Ave., #162
Lemon Grove, CA 91942

NOV 28, 2007     2:59 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J SMITH, COUNTY RECORDER
FEES:     50.00
OC          AFNF

PAGES:     3

MAIL TAX STATEMENTS TO:

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DOCUMENTARY TRANSFER TAX $ GIFT
[ x ] Computed on the consideration or value of property conveyed; OR
[   ] Computed on the consideration or value less liens or encumbrances
      remaining at time of sale.

APN  -480-620-22-00         8411

_Signature of Declarant or Agent determining tax - Firm Name_

## GRANT DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Donnie Knauls, A Single Man As His Sole And Separate Property

hereby GRANT(S) to  IDEAL MORTGAGE LENDERS

the real property in the State of Califorina, County of  SAN DIEGO , City of  LEMON GROVE described as

### SEE EXHIBIT "A"

Dated NOVEMBER 23, 2007          Donnie R. Knauls

STATE OF CALIFORNIA          )
COUNTY OF San Diego          )ss.
                             )
On November 23 before me,  ARNIE M. BELLE  A Notary Public personally appeared
                      Donnie R. Knauls                    personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the
instrument.
WITNESS my hand and official seal.

Signature _____ A NOTARY PUBLIC

(This area for official notarial seal)

MAIL TAX STATEMENTS AS DIRECTED ABOVE



ARNIE M. BELLE
COMM. #1452987
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
NOVEMBER 24, 2007

8412

5

File No: 02393509

## EXHIBIT "A"

All that certain real property situated in the County of San Diego, State of California, described as follows:

That portion of Tract No. 1370, in the City of Lemon Grove, County of San Diego, State of California, according to Map thereof No. 1370, filed in the office of the County Recorder of San Diego County, September 7, 1911, described as follows:

Beginning at the Southeast corner of said Tract;

Thence North 89° 36' West along the Southerly line of said Tract 216.25 feet to the Southeast corner of that tract of land conveyed by Harold S. McLean and Josephine McLean, husband and wife, to Carrie I. Boyd, by Deed dated July 6, 1928 and recorded in Book 1510, page(s) 218, of Deeds;

Thence North 1° 17' 10" West along the East line of the land so conveyed to Carrie I. Boyd, 839 feet to the Northwesterly corner of the land described in Deed to Reuben I. Seder, et ux, recorded June 29, 1946, in Book 2190, page(s) 385, of Official Records, said corner being the True Point of Beginning;

Thence retracing South 1° 17' 10" East 50 feet;

Thence South 89° 36' East 216.67 feet to the East line of said Tract;

Thence North 1° 15' West along said East line 50 feet to the Northeast corner of said Seder land;

Thence North 89° 36' West 216.70 feet to the True Point of Beginning.

Page 3

EXHIBIT B

3

**OFFICIAL CALIFORNIA NOTARIAL CERTIFICATE**
**JURAT**

8413

State of California

County of _San Diego_

Subscribed and sworn to (or affirmed) before me on this _23ʳᵈ_ day of _November/2007_, by

_____ _Donnie B. Knawls_ _____,

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who

appeared before me.

Seal

ARNIE M. BELLE
COMM. #1452987
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
NOVEMBER 24, 2007

_____ , Notary Public
Signature

_____ADDITIONAL INFORMATION_____

**DOCUMENT INFORMATION**

Document Date _November 23, 2007_

Number of Pages _____

[ ] Placed under Oath  [ ] Placed under Affirmation [X] Document Signed before the
Notary

**TYPE OF IDENTIFICATION**

[X] Personal Knowledge of the Notary Public
[ ] Satisfactory Evidence –identification card
[ ] One Credible Witness acknowledging identity of principal
[ ] Two Credible Witnesses acknowledging identity of principal

EMBOSSMENT

Copyright © 1994, All Rights Reserved, California School of Notary Public, Inc.

# Exhibit "C"

EXHIBIT C



This page is part of your document - DO NOT DISCARD

**06 2187084**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**10/02/06 AT 08:00am**

# TITLE(S) :



L E A D     S H E E T

FEE                                                      D.T.T.



CODE
20            O.A. FEE Code 20  Y  $ 2.00

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.      Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

LOS ANGELES,CA    DOCUMENT: TD 2006.2187084                      Page 1 of 20

Printed on 2/7/2008 5:19:34 PM      Provided by DataTrace System

EXHIBIT C

**FIDELITY NATIONAL TITLE**

Recording Requested By:
~~Argent Mortgage Company, LLC~~

06 2187084

2

Return To:

Argent Mortgage Company, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt 19 North
Palm Harbor, FL 34683

Prepared By: Argent Mortgage Company, LLC
Juan Preciado
One City Boulevard West
Orange, CA 92868

227744.4                   [Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 8, 2006
together with all Riders to this document.
(B) "Borrower" is DONNIE RAY KNAULS, A Single Man

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0101928836 - 9506

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01

🅥🅜🅟 -6(CA) (0005)
Page 1 of 15                        Initials: DRK
  VMP MORTGAGE FORMS - (800)521-7291                           09/08/2006 5:06:00 PM

d06-01ca (05/2005)Rev.01

09/03/08

*3*

Lender's address is **3 Park Plaza - 10th Floor  Irvine, CA 92614**

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is **Town and Country Title Services, Inc.**

(E) "Note" means the promissory note signed by Borrower and dated **September 8, 2006**
The Note states that Borrower owes Lender **three hundred sixty thousand and 00/100**
                                                                                          **Dollars**
(U.S. $ **360,000.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **October 1, 2036**                         .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

0101928836 - 9506
Initials: _____

-6(CA) (0005)                    Page 2 of 15        09/08/2006 5:06:00    Form 3005  1/01

D06-02CA (05/2005)Rev.01            **06 2187084**

4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
     **County**           of          **LOS ANGELES**          :
       [Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]
**EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:**

Parcel ID Number: 6088-004-022                          which currently has the address of
545 WEST 115TH STREET                                                     [Street]
LOS ANGELES                               [City], California 90044        [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0101928836-9506
Initials: _____

-6(CA) (0005)          Page 3 of 16   09/08/2006 5:06:00 PM  Form 3005  1/01

(05/2005)Rev.01                    06.2187084

LOS ANGELES,CA    DOCUMENT: TD 2006.2187084                    Page 4 of 20
Printed on 2/7/2008 5:19:34 PM     Provided by DataTrace System

EXHIBIT C

5

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

0101928836 - 9506
Initials: _DPK_

-6(CA) (0005)     Page 4 of 15     09/08/2006  5:06:00     Form 3005  1/01

D06-04CA (05/2005)Rev.01            06 · 2187084

09/28/08

LOS ANGELES,CA     DOCUMENT: TD 2006.2187084                 Page 5 of 20

Printed on 2/7/2008 5:19:34 PM        Provided by DataTrace System

EXHIBIT C

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0101928836 - 9506
Initials: _NRK_

-6(CA) (0005)     Page 6 of 15     09/08/2006 5:06:00     Form 3005  1/01

D06-05CA (05/2005)Rev.01     06 2187084

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

09/02/06

-6(CA) (9905).02    Page 8 of 15    0101928836 - 9506
Initials: DRK
09/08/2006 5:06:00    Form 3005   3/99

D06-06CA (05/2005)Rev.01    06 2187084

EXHIBIT C

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0101928836 - 9506
Initials: _NKK_

VMP -6(CA) (0005)    Page 7 of 16    09/08/2006  5:06:00    Form 3005  1/01

D06-07CA (05/2005)Rev.01

06 2187084

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0101928836 - 9506
Initials: *JKK*

-6(CA) (0005)          Page 8 of 15          09/08/2006 5:06:00          Form 3005  1/01

D06-08CA (05/2005)Rev.01

06 2187084

98/20/01

EXHIBIT C

*/0*

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0101928836 - 9506
Initials: *DKK*

-6(CA) (0005)          Page 9 of 15          09/08/2006 5:06:00     Form 3005   1/01

D06-09CA (05/2005)Rev.01                    06  2187084

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0101928836 - 9506
Initials: _DKK_

-6(CA) (0005)          Page 10 of 15    09/08/2006 5:06:00    Form 3005  1/01

D06-10CA (05/2005)Rev.01

06 2187084

*12*

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0101928836 - 9506
Initials: _DKK_

-6(CA) (0005)        Page 11 of 15    09/08/2006 5:06:00    Form 3005  1/01

D06-11CA (05/2005)Rev.01                **06 2187084**

LOS ANGELES,CA    DOCUMENT: TD 2006.2187084                    Page 12 of 20

Printed on 2/7/2008 5:19:35 PM    Provided by DataTrace System

EXHIBIT C

*13*

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

09/28/01

0101928836 - 9506

Initials: *JKK*

-6(CA) (0005)    Page 12 of 15    09/08/2006 5:06:00    Form 3005  1/01

D06-12CA (05/2005)Rev.01    06 2187084

*14*

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

0101928836 - 9506
Initials: _HKK_

-6(CA) (0005)                Page 13 of 15        09/08/2006 5:06:00        Form 3005   1/01

D06-13CA (05/2005)Rev.01

06 2187084

09/28/06

Printed on 2/7/2008 5:19:35 PM            Provided by DataTrace System

EXHIBIT C

*15*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        *Donnie Ray Knauls*                    (Seal)
                                          DONNIE RAY KNAULS              -Borrower

_____        _____ (Seal)
                                                                          -Borrower

_____ (Seal)  _____ (Seal)
                                -Borrower                                 -Borrower

_____ (Seal)  _____ (Seal)
                                -Borrower                                 -Borrower

_____ (Seal)  _____ (Seal)
                                -Borrower                                 -Borrower

0101928836 - 9506

-6(CA) (0005)                 Page 14 of 15  09/08/2006  5:06:00  PM  Form 3005  1/01

(05/2005)Rev.01                          06 2187084

16

State of California

County of *SAN DIEGO* } ss:

On *9/10/06* *10/SEPT/2006* before me, *CYNTHIA MARIE LOWERY, NOTARY*
        Day/Month/Year                     Notary Public              *PUBLIC*

personally appeared

*DONNIE RAY KNAULS*

~~personally known to me~~ (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

Witness my hand and official seal.

_____ *Cynthia Marie Lowery* (Seal)
Notary Public







Page 15 of 15          0101928836 - 9506
                       09/08/2006 5:06:00 PM

400-15CA (05/2005)Rev.01          06  2187084

EXHIBIT C

Order No. 06-2777444

17

# EXHIBIT "ONE" A

Lot(s) 21 in Block "A" of the Replat of Figueroa Heights, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 11, Page(s) 103 of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel No: 6088-004-022

06 2187084

2                                             (Rev. 11/17/04)

18

## ADJUSTABLE RATE RIDER
(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 8th day of September , 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

545 WEST 115TH STREET, LOS ANGELES, CA 90044
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.300 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
The interest rate I will pay may change on the first day of  October, 2008 , and on that day every six month thereafter. Each date on which my interest rate could change is called a "Change Date."

    **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent index figure available as of the date 45 days before each Change Date is called the "Current Index."

    If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials *DRK*

Loan Number: 0101928836 - 9506

610-1 (Rev 1/01)                       Page 1 of 3

09/08/2006 5:08:00 PM

06 2187084

LOS ANGELES,CA      DOCUMENT: TD 2006.2187084                       Page 18 of 20

Printed on 2/7/2008 5:19:36 PM        Provided by DataTrace System

EXHIBIT C

19

**(C) Calculation of Changes**
     Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

     The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date at my new interest rate in substantially equal payments in accordance with the amortization set forth in Sections 3(B) and 3(C) of the Note. The result of this calculation will be the new amount of monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.300%** **or less than 8.300%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One( 1.000** %) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 14.300)% or less than 8.300)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
     Section 18 of the Security Instrument is amended to read as follows:

     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials _D R K_

Loan Number: 0101928836 - 9506

**06 2187084**

610-2 (11/2005) Rev. 1                    Page 2 of 3

09/08/2006 5:06:00 PM

LOS ANGELES,CA     DOCUMENT: TD 2006.2187084                    Page 19 of 20

EXHIBIT C

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Donnie Ray Knauls_ (Seal)    _____ (Seal)
Borrower DONNIE RAY KNAULS          Borrower

_____ (Seal)    _____ (Seal)
Borrower                            Borrower

Loan Number:  0101928836 - 9506

06 2187084

610-3 (Rev 1/01)                    Page 3 of 3

09/08/2006 5:06:00 PM

Exhibit "D"

EXHIBIT D

This page is part of your document - DO NOT DISCARD



**20072627726** Pages: 002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/29/07 AT 12:25PM**

| | |
|---|---|
| Fee: | 31.00 |
| Tax: | 0.00 |
| Other: | 6.00 |
| **Total:** | **37.00** |

1413738    200711290030041   Mail

## TITLE(S) :   DEED



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.      **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

LOS ANGELES,CA    DOCUMENT: D 2007.2627726                                  Page 1 of 2

Printed on 2/11/2008 12:27:54 PM          Provided by DataTrace System

EXHIBIT D

Escrow No
Order No

WHEN RECORDED MAIL TO:

IDEAL MORTGAGE LENDERS
7107 Broadway Ave., #162
Lemon Grove, CA 91942

11/29/07

20072627726

SPACE ABOVE THIS LINE FOR RECORDER'S USE

MAIL TAX STATEMENTS TO:

*Same as above*

APN 6088-004-022

DOCUMENTARY TRANSFER TAX $ GIFT

[ x ] Computed on the consideration or value of property conveyed; OR
[  ] Computed on the consideration or value less liens or encumbrances remaining at time of sale

_Sullan Tree_
Signature of Declarant or Agent determining tax - Firm Name

# GRANT DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Donnie Knauls, A Married Man As His Sole And Separate Property
hereby GRANT(S) to IDEAL MORTGAGE LENDERS

the real property in the State of California, County of Los Angeles , City of Los Angeles described as

REPLAT OF FIGUERO HEIGHTS LOT 21, *in block 'A' of*
*in the City OF Los Angeles, County of Los Angeles, State of*
*California, Book 11 Page 103 of maps, in the office of the*
*County Recorder*

Dated  *NOVEMBER 23, 2007*

*Donnie R Knauls*
*DONNIE R. KNAULS*

STATE OF CALIFORNIA          )
                             )ss
COUNTY OF *San Diego*        )
On *NOV.23,2007* before me, *ARNIE M. BELLE A Notary Public* personally appeared
*DONNIE R. KNAULS* personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature *A. M. Belle* *A Notary Public*

(This area for official notarial seal)

MAIL TAX STATEMENTS AS DIRECTED ABOVE



ARNIE M. BELLE
COMM. #1452987
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
NOVEMBER 24, 2007

LOS ANGELES,CA    DOCUMENT: D 2007.2627726                    Page 2 of 2

Printed on 2/11/2008 12:27:54 PM        Provided by DataTrace System

EXHIBIT D

**PROOF OF SERVICE**
(C.C.P. section 1013a(3))

STATE OF CALIFORNIA          )
                             )   SS.
COUNTY OF LOS ANGELES        )

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 5220 Las Virgenes Road, MS: AC-11, Calabasas, California 91302.

On April 3, 2008, I served NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE on all interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Donnie Knauls                       Francis J. Cunningham, III
2360 Cypress Avenue                 Cunningham & Treadwell
Lemon Grove, California 91945       21800 Oxnard Street
                                    Suite 840
                                    Woodland Hills, CA 91367

[X]     **(BY MAIL)** On April 3, 2008, I placed said envelopes for collection and mailing, following ordinary business practices, at the business offices of Countrywide Home Loans, Inc., at the address set forth above, for deposit in the United States Postal Service. I am readily familiar with the practice of Countrywide Home Loans, Inc. for collection and processing of correspondence for mailing with the United States Postal Service, and said envelopes will be deposited with the United States Postal Service on said date in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]     **(BY OVERNIGHT DELIVERY)** On April ___, 2008, I placed said envelopes for collection and mailing, following ordinary business practices, at the business offices of Countrywide Home Loans, Inc., at the address set forth above, for deposit with Federal Express with delivery fees provided. I am readily familiar with the practice of Countrywide Home Loans, Inc. for collection and processing of correspondence for mailing with Federal Express, and said envelopes will be deposited with Federal Express on said date in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]     **(BY HAND DELIVERY)**

[ ]     **(BY FACSIMILE)** On April ___, 2008, by use of facsimile machine number 818-871-4669, I served a copy of the within document(s) on the above interested parties at the facsimile numbers as indicated. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct. Executed on April 3, 2008, at Calabasas, California.

_____
Desiree Rais

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE